Filed 8/14/26  Robinson v. Bhola CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RAYMOND G. ROBINSON, Individually and as Executor, etc., | D087156 |
| Plaintiff and Appellant, | (Super. Ct. No. CVSW2406912) |
| v. | |
| VIP BHOLA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Raquel Marquez, Judge.  Affirmed.

Robinson Legal and Raymond G. Robinson for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Raymond G. Robinson (Robinson) and his wife, Debbie A. Robinson, filed a complaint against Vip Bhola and others, asserting causes of action for intentional and negligent infliction of emotional distress.  Bhola responded by filing an anti-SLAPP special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP law).[1]  The trial court

---

1    SLAPP is an acronym for strategic lawsuit against public participation. All unspecified statutory references are to the Code of Civil Procedure.

granted the motion and entered a judgment dismissing the complaint as against Bhola. Robinson, for himself and as alleged executor for the Estate of his (now-deceased) wife,[2] argues this was error. However, we conclude he has forfeited his arguments as a result of having failed to comply with court rules and, notwithstanding the forfeiture, that the appeal fails on the merits in any event.

## I.    BACKGROUND

This case arises from activities of three individuals involved in the legal profession.

### A.    Allegations of the Complaint[3]

According to the allegations of the complaint, Robinson and Bhola are attorneys admitted to practice law in the State of California. Several years ago each of them independently became professionally involved with a formerly incarcerated violent offender named Kevin Moda, who worked as a litigation consultant and paralegal.

In August 2021, Moda recruited Robinson to work with him on behalf of defendants in a foreclosure-related lawsuit known as the Vista Land Case. Then, not long after he had joined forces with Moda to represent the defendant in that case, Robinson began representing Moda himself in three other cases, one of which was a bankruptcy proceeding. But the relationship between Robinson and Moda rapidly deteriorated.

In the fall of 2021, Robinson discovered that Moda "had been stealing the identi[t]y of Mr. Robinson, and at least two other attorneys, in order to

---

[2]    We cannot locate in the record on appeal any orders appointing Robinson as executor of his wife's estate.

[3]    Each statement in section I(A) of this opinion is drawn from the pleadings. We express no view as to the accuracy of any such statement.

practice law without a license" and had "stole[n] the title to a condominium owned by . . . the former wife of one of his clients." In addition, Moda made several disturbing remarks to Robinson. Among them: (1) a comment that " 'some attorneys' only understand things when 'you show them a gun' "; (2) a statement that he "was going to have his Russian mobster friends beat . . . 'senseless' " a party who had subpoenaed him (the subpoenaing party) in the bankruptcy proceeding; and (3) a description of an instance in which he (Moda) had "burst in[to]" a litigation adversary's home, "[b]eat [the adversary] senseless," and "threatened to have the man murdered if he reported the beating to the police."

Following the discoveries and comments discussed *ante*, there ensued a series of events: (1) in which Robinson reported Moda to the State Bar of California (State Bar) for practicing law without a license and alerted the attorney for the subpoenaing party in the bankruptcy proceeding that Moda had made a threat of violence directed at the attorney's client; and (2) in which Moda "switched sides" in the Vista Land case, delivered the litigation file of his and Robinson's client in that case to adverse parties in that case, and began assisting the adverse parties and their attorneys, one of whom was Bhola.

Commencing at or around this time, several additional sets of disturbing events began to occur. One such set of disturbing events involved Bhola forging and filing litigation documents in the names of Robinson and another attorney, making false and disparaging statements about Robinson in court, and falsely claiming that Robinson was refusing to surrender client files to his successor counsel—Bhola—in the matters in which he had represented Moda.

3

Another set of disturbing events that began to occur at this time was Robinson's receipt of telephone calls from Moda pretending to be someone other than himself. In one of these calls, Moda posed as an employee of the State Bar. In another, he posed as a police detective.

Yet another other set of disturbing events that began to occur at this time was a series of threats directed against the Robinsons. One such threat occurred during a telephone call between Robinson and Moda in which Moda threatened in graphic detail "to have Mr. Robinson beaten up by thugs associated with the Russian Mafia." Another such threat occurred a few days later, when "Moda called back . . . and threatened to have gangsters beat [Robinson] up." A third such threat involved Robinson's receipt of a text message from an unknown telephone number which stated: "You know you fucked up bad and I am going to prejudice your entire family. No one will be left off the ride you cunt." The Robinsons interpreted this text message as a threat from Moda "to annihilate the Robinson family and cause the family financial ruin."[4]

Associated with these threats were incidents that further unsettled the Robinsons. Among them: (1) Robinson's receipt of an e-mail from Moda that included a photograph of a man, dressed as a soldier, pointing a military-style long gun toward the camera; and (2) Bhola's mailing of Vista Land Case

---

[4]    In the Vista Land Case, Robinson filed two motions through which he says he unsuccessfully "sought . . . to hold [Bhola, Moda, and their clients] responsible for their death threats"

4

court papers to Robinson at the Robinsons' home address rather than at Robinson's office address.[5]  In the words of the complaint:

> "[Bhola's] mailing of court papers directly to the Robinson[s'] home in Utah, instead of to Mr. Robinson's office, is clearly a novation of the threat and adds the [further] threat of 'we know where you live.'  This makes the threat of harm more eminent [sic] and real.  [¶ . . . ¶] Certainly, Mr. Bhola's sending Vista [Land] Case papers to Mrs. Robinson's home served no useful purpose other than terrori[z]ing her.  'I know where you live.  I have not forgotten my threats to murder your entire family,' is the message he delivered in that envelope."

The conduct described above caused the Robinsons emotional distress and, in the case of Mrs. Robinson, triggered "an especially aggressive leukemia with a poor survival rate."

## B.    The Anti-SLAPP Special Motion to Strike

In 2024 the Robinsons filed a complaint against Bhola and others, alleging the matters discussed above and asserting two causes of action:  one for intentional infliction of emotional distress; and the other for negligent infliction of emotional distress.  In response to the complaint, Bhola filed an anti-SLAPP special motion to strike.  In opposition to the motion, the Robinsons filed a brief, a Declaration of Raymond G. Robinson, a request for

---

[5]    The only indication we see in the appellate record that Bhola might have sent something to the Robinson home are documents suggesting that he mailed to that location an abstract of judgment reflecting entry of a $61,875 judgment against Robinson and Robinson's client, in the Vista Land Case.  Although the record is not entirely clear, this judgment appears to be for an award of attorneys' fees arising from contempt proceedings that Bhola prosecuted against Robinson and Robinson's client in that case.  Responding in his motion papers to the allegation that he mailed court papers to the Robinson home, Bhola neither confirms nor denies the allegation, but says:  "There is nothing extreme and outrageous about sending legal correspondence and pleadings to Mr. Robinson, a judgment debtor."

judicial notice (RJN) and, attached to the RJN, hundreds of pages of filings from a variety of different lawsuits, along with e-mail correspondence, a copy of the text message quoted above, and other exhibits.[6]  The trial court granted the anti-SLAPP special motion to strike and entered a judgment dismissing the complaint as against Bhola.

Robinson timely appealed.

## II.  THE ANTI-SLAPP LAW

As noted above, Bhola's motion is premised on the anti-SLAPP law. The Legislature enacted this law in 1992 to help weed out, in early stages of litigation, unmeritorious causes of action brought primarily to chill plaintiffs' valid exercise of certain constitutional rights.  (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315; § 425.16, subd. (a).)  The mechanism the Legislature created to achieve this objective has since come to be known as an anti-SLAPP special motion to strike.  (*Club Members*, at p. 315.)

The filing of an anti-SLAPP special motion to strike triggers a two-step (sometimes referred to as a two-stage or two-pronged) burden-shifting process.  (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022.)  First, the defendant must carry the burden of making a prima facie showing that a cause of action alleged in the complaint "arises from" an act of that defendant that is "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California constitution in connection with a public issue" (protected activity).  (§ 425.16, subd. (b)(1); see also *Geragos,* at pp. 1021–1022.)  Second, if the defendant succeeds in carrying this burden, then the plaintiff must establish "a probability that the

_____

[6]  We find no indication in the record on appeal as to whether or how the court ruled on the RJN.

6

plaintiff will prevail on the claims." (§ 425.16, subd. (b)(1); see also *Geragos,* at pp. 1021–1022.)

At step one, " ' "[w]e look for 'the *principal thrust or gravamen* of the plaintiff's cause of action.' " ' " (*Eagle Colton 55, LP v. City of Colton* (2026 Cal. App. LEXIS 439.) " ' "We 'do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action.' " ' " (*Ibid.*) " ' "The 'critical consideration' is what the cause of action is '*based on.*' " ' " (*Ibid.*)

At step two, "the plaintiff must show both that the claim is legally sufficient and there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108.) In making its assessment as to whether the plaintiff has succeeded in making such a showing, "the court must consider both the legal sufficiency of and evidentiary support for the pleaded claims, and must also examine whether there are any . . . defenses to the pleaded claims and, if so, whether there is evidence to negate any such defenses." (*Ibid.*; see also *Six4Three, LLC v. Facebook, Inc.* (2025) 109 Cal.App.5th 635, 654.)

On appeal of an order granting an anti-SLAPP special motion to strike, we apply the de novo standard of review. (*Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 825.)

### III.  ANALYSIS

Robinson argues that the trial court erred in granting the motion, and that this court should conclude on its de novo review that the complaint does not arise from protected activity (step one) or that he (Robinson) has succeeded in demonstrating a probability that he will prevail on the merits. However, for reasons set forth *post*, we conclude he forfeited these arguments

7

as a result of having failed to comply with court rules and, notwithstanding the forfeiture, that the appeal fails on the merits in any event.

## A. Robinson Forfeited His Arguments by Failing to Provide Adequate Citations to the Record on Appeal

We begin our analysis with one of the "cardinal principles of appellate review," that being that an "appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 (*Alki*).) A corollary to this cardinal rule is the requirement, enshrined in rule 8.204(a)(1)(C) of the California Rules of Court,[7] that each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."

These rules have a purpose, namely "to enable appellate justices and staff attorneys to locate relevant portions of the record expeditiously." (*Alki, supra,* 4 Cal.App.5th at pp. 589–590.) Consequently, " '[a]ny statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record*' " (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970), and that citation must comply with rule 8.204(a)(1)(C).

When such a statement is *not* accompanied by a rule-compliant citation to the location in the appellate record where support for the statement may be found, "[i]t is not our role to scour the record to find evidence to support [the statement]." (*Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228, fn. 5.) In such circumstances, we may—and we routinely do—conclude

---

7    All unspecified rule references are to the California Rules of Court.

8

that the corresponding point urged on appeal is forfeited. (See, e.g., *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 ["Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record."]; *Villalva v. Bombardier Mass Transit Corp.* (2025) 108 Cal.App.5th 211, 217, fn. 2 [striking statement of facts in brief because it "contain[ed] no citation to the record in violation of California Rule of Court 8.204(a)(1)(C)"]; *Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 514 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "; concluding appellant "forfeited his assignment of error"].)

In his brief, Robinson supplies us with a nine-page, roughly chronological narrative of what he contends are the pertinent events that occurred prior to the filing of the complaint. This narrative comprises numerous events and activities—all involving varying combinations of Robinson, Bhola, and Moda—that Robinson says transpired in or against the backdrop of several different lawsuits. Yet nowhere in this narrative of pre-complaint events does Robinson include a single rule-compliant citation.

Robinson does include in this narrative a smattering of *non*-compliant citations (eight in all). But these citations are few and far between, they apply to only a small number of the material representations in the narrative, they do not indicate on what page of the appellate record the

9

information to which they refer is to be found,[8] and, they leave the bulk of the narrative's material representations wholly unsubstantiated by any portion of the record that the court can expeditiously locate.

It is not until the narrative turns to events that occurred *after* the filing of the complaint that the brief presents its first *rule-compliant* citation. In all, there are 22 rule-compliant citations. Of these, all 22 are to documents that did not come into existence until after the filing of the complaint, and only two of them refer to anything that could even remotely be described as evidence in opposition to Bhola's anti-SLAPP special motion to strike.[9] Each of these two citations is to an order, issued 11 months after the filing of the complaint, in which a trial court issued a $5,000 sanction award against Bhola in a case in which Robinson does not even appear to have been involved. And Robinson cites this order only as support for the impenetrable

---

[8]     Examples of these citations include: "Supp 1, Exhibit 5" and "Supp 1, Dec. Robinson para. 16." Robinson blames his failure to comply with rule 8.204(a)(1)(C) on the clerk's transcript having omitted some of the papers the Robinsons had filed in opposition to the motion. But he furnishes no insight (i) into why this omission—which occurred more than three months before his brief was filed in this court—was not discovered in time to have been remedied before he filed his brief or (ii) as to why under the circumstances he did not request an extension of time to enable him to file a rule-compliant brief in lieu of burdening this court with citations that prevent us from being able to expeditiously locate pertinent portions of the record. (See *Alki, supra,* 4 Cal.App.5th at pp. 589-590 [rule 8.204(a)(1)(C)'s purpose is to enable court "to locate relevant portions of the record expeditiously"].)

[9]     Of the other 20 rule-compliant citations, 15 are to the unverified complaint, one is to a page of the moving brief Bhola filed in support of the anti-SLAPP special motion to strike, one is to a request by Robinson for a continuance of the hearing on the motion, two are to the order granting the motion, and one is to the judgment of dismissal that was entered upon the granting of the motion.

10

proposition that (as stated in his brief): "The hatred, animosity and malice go to show motive in participating in death threats. [ibid. throughout the complaint and as noted in the opposition to the anti-SLAPP motion."]

As can be seen, on an appeal in which Robinson is required to lead us to evidence demonstrating a probability that he will prove his claims and defeat any applicable defenses, the only evidence that Robinson has enabled us to expeditiously locate is one single document the relevance of which is dubious at best. " '[D]e novo review does not obligate us to cull the record for the benefit of the appellant.' " (*Alki, supra,* 4 Cal.App.5th at p. 590.) Robinson has not carried his burden to cite us properly and effectively to the record on appeal. Hence his arguments are forfeited.

## B. The Appeal Fails on the Merits

Even if we were to disregard the forfeiture, we would conclude the appeal fails on the merits. In arriving at this conclusion, we begin by observing that, fairly read, the complaint articulates two different claims against Bhola: (1) a claim that Bhola engaged in deceptive and disparaging conduct against Robinson in court proceedings; and (2) a claim that threats of violence that Moda directed against the Robinsons are also attributable to Bhola. Neither of these claims withstands application of the anti-SLAPP law.

### 1. The Claim that Bhola Engaged in Deceptive and Disparaging Conduct Against Robinson in Court Proceedings

Focusing first on the claim that Bhola engaged in deceptive and disparaging conduct against Robinson in court proceedings, we begin by observing at step one of the anti-SLAPP analysis that filing declarations and participating in oral argument at a hearing are activities that fall squarely within the anti-SLAPP law's definition of protected activity. (§ 425.16, subd.

11

(e) [protected activity includes "any written or oral statement or writing made before a . . . judicial proceeding" or "in connection with an issue under consideration or review by a . . . judicial body"].) Each of these types of conduct is a *paradigm* of protected activity within the meaning of the anti-SLAPP law. As a general rule, allegations that such declarations were forged or that representations made to the court during oral argument were false and disparaging do not remove them from anti-SLAPP protection at step one, because courts do not decide the legitimacy of such litigation activities at step one.[10] (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 ["any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [step two] burden to provide a prima facie showing of the merits of the plaintiff's case' "].)

Turning to step two of the anti-SLAPP analysis, Robinson fails to explain how either of the causes of action he contends arise from his claim of litigation misconduct—(1) a tort cause of action for intentional infliction of emotional distress and (2) a tort cause of action for negligent infliction of emotional distress—can withstand the absolute defense furnished to Bhola

---

[10] In rare circumstances, allegations of litigation misconduct *can* remove litigation activities from anti-SLAPP protection at step one. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*).) Such circumstances arise in situations in which "*the defendant concedes*" (*id.* at p. 316, italics added) or "*evidence conclusively establishes*" (*id.* at p. 320, italics added) that the assertedly protected activity was illegal. (Accord *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210 ["*Flatley* . . . is a very narrow exception"]; see also *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056–1058 [treating the filing of a declaration as protected activity despite allegation that it was perjured].) Robinson has not directed us to any concession of illegality on the part of Bhola. Nor, as noted above, has he effectively directed us to evidence that conclusively establishes any of Bhola's litigation conduct was illegal.

by the litigation privilege of Civil Code section 47, subdivision (b)(2).[11] (See *Bonni v. St. Joseph Health System* (2022) 83 Cal.App.5th 288, 300 [" 'Civil Code section 47, subdivision (b), "confers an absolute privilege to communications made as part of a ' "judicial . . . proceeding[]" ' "]; *Bonni,* at p. 306 ["[c]ourts have consistently emphasized the privilege, when applicable, is absolute and precludes *all* tort theories of recovery except malicious prosecution"]; *Jeffrey H. v. Imai, Tadlock & Keeney* (2000) 85 Cal.App.4th 345, 361 (*Jeffrey H.*) [citing "line of decisions hold[ing] that Civil Code section 47, subdivision (b)(2), immunizes defendants from tort liability based on . . . intentional infliction of emotional distress," and stating that "[t]hese precedents clearly also apply to . . . negligent infliction of emotional distress"]; *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 641–643 (*Steiner*) [holding that Civil Code section 47 barred cause of action based on allegations that a will submitted to probate had been forged, and affirming order striking such allegations from complaint].)

Hence, with regard to the claim that Bhola engaged in deceptive and disparaging conduct against Robinson in court proceedings, we conclude Robinson has failed to satisfy his burden at step two.

---

11    Robinson discusses Civil Code section 47 in his brief. But that discussion focuses exclusively on two topics that are of no relevance to this case. Those two topics are: (1) applicability of that section's subdivision (b)(2) *litigation* privilege to *pre*-litigation activities; and (2) applicability of neighboring subdivision (c)'s *interested-person* privilege. The conduct that the complaint alleges as a basis for liability is conduct that occurred *during*, not before, the litigation that is the subject of the complaint; and the privilege Bhola invoked in his anti-SLAPP special motion to strike was the *litigation* privilege, not the interested-person privilege.

### 2. The Claim that Threats of Violence that Moda Directed Against the Robinsons Are Also Attributable to Bhola

Insofar as the claim involving threats of violence are concerned, we begin by observing at step one that the threats of violence that Moda allegedly directed at the Robinsons obviously were not "act[s] in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)) and thus cannot reasonably be said to have been protected activity. But this does not end our analysis inasmuch as we note further that nowhere in the complaint is there an allegation that any such threats were articulated *by Bhola.* Instead, the complaint in essence *presumes* that Bhola "adopted" or "ratified" the threatening statements attributed to Moda. But the activity through which the complaint purports to link Bhola to the threats—i.e., Bhola's conduct in mailing Vista Land Case court papers to a person (Robinson) who was involved in the case as both an attorney and a judgment debtor (see *ante*)—are activities that *epitomize* the anti-SLAPP law's definition of protected activity. (See § 425.16, subd. (e).) Hence we conclude the defense burden at step one is satisfied.

Turning to step two, our analysis *ante* with respect to the claim that Bhola engaged in deceptive and disparaging conduct against Robinson in court proceedings applies with equal force to the claim that Bhola adopted or ratified Moda's threats of violence. Here again, Robinson not only fails to lead us expeditiously to evidence in the record that will support such a claim (see *ante*); he also fails to adequately explain how either of the two tort causes of action that he contends arise from these claims can withstand the absolute defense furnished by the litigation privilege set forth in subdivision (b)(2) of section 47 of the Civil Code. (See *Bonni v. St. Joseph Health System, supra,* 83 Cal.App.5th at pp. 300, 306; *Jeffrey H., supra,* 85 Cal.App.4th at

14

p. 361; *Steiner, supra,* 181 Cal.App.3d at p. 641.)  Hence we conclude Robinson has failed to satisfy the burden he must shoulder, at step two, of establishing that he probably will prevail on his claim that the threats of violence made by Moda are also attributable to Bhola.

## IV.  DISPOSITION

The order and judgment are affirmed.  Bhola having not appeared in this appeal, no costs are awarded.


KELETY, J.


WE CONCUR:


BUCHANAN, Acting P. J.


CASTILLO, J.

15